UNITED STATES DISTRICT COURT
FOR THE Northern District of Illinois – CM/ECF NextGen 1.8 (rev. 1.8.5)
Eastern Division

Federico Diaz Acevedo
                    Plaintiff,

v.                                                  Case No.: 1:25−cv−15271
                                                    Honorable Steven C. Seeger

Samuel Olson
                    Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Wednesday, December 24, 2025:

      MINUTE entry before the Honorable Steven C. Seeger: Petitioner Diaz−Acevedo's emergency motion for a temporary restraining order and injunctive relief (Dckt. No. [6]) is hereby denied without prejudice. Petitioner, a 68−year−old man, was arrested by ICE in Chicago on December 16, 2025, and promptly filed a petition for habeas corpus. The petition seeks his immediate release, and challenges ICE's policy of mandatory detention. Earlier today, roughly two hours ago, Petitioner's counsel filed an emergency motion for a TRO, based on Petitioner's health condition. The motion contends that Petitioner has "asthma and a life−threatening heart condition," and "needs an albuterol inhaler and takes multiple medications." (Dckt. No. [6]) He has an unspecified medical procedure scheduled for a few weeks from now, on January 8, 2026. The motion adds that Petitioner has a "new developing medical emergency as of the filing of this motion," but doesn't reveal what it is. Based on the motion, ICE has moved Petitioner from facility to facility since his arrest on December 16. He initially went to a state prison in Louisiana, and later was sent to the Mahoning County Jail in Ohio. Petitioner's counsel spoke with officials from that jail on December 20, and was told that they "would be able to provide him with the inhaler at some point but had no information about the other medications." Counsel spoke with the jail officials again on December 23, and "received confirmation from the staff that there was an entirely new and potentially life−threatening situation developing. Counsel also learned that Petitioner had not at that time actually received any of his medications." Earlier today (December 24), counsel spoke with the jail officials yet again, and learned that Petitioner apparently was transferred by ICE to an unknown location. That conversation did not yield any additional information about whether Petitioner has received any medication. At this juncture, the Court respectfully declines to issue a temporary restraining order. Because the standard for granting a temporary restraining order and a preliminary injunction is the same, the Court proceeds under the familiar Winter v. National Resources Defense Council, Inc. framework. USA−Halal Chamber of Com., Inc. v. Best Choice Meats, Inc., 402 F. Supp. 3d 427, 433 n.5 (N.D. Ill. 2019). "A preliminary injunction is an extraordinary equitable remedy that is available only when the movant shows clear need." Turnell v. CentiMark Corp., 796 F.3d 656, 661 (7th Cir. 2015). As such, one is "never awarded as of right." Doe v. Univ. of S. Ind., 43 F.4th 784, 791 (7th Cir. 2022) (quoting Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008)). To be awarded such relief, a plaintiff "must establish

that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Id. (quoting Winter, 555 U.S. at 20, 129 S.Ct. 365). As things stand, there is too much uncertainty about the underlying facts. It is not clear where Petitioner is located, let alone whether he is receiving his medications. By the sound of things, Petitioner might have received his inhaler (based on the statement by the county jail on December 20), but it is unknown whether Petitioner is receiving his heart medication. The motion says that Petitioner is facing an "entirely new and potentially life−threatening situation," but the motion doesn't reveal what that situation is, let alone why it is life−threatening. A statement that a person is facing a life−threatening situation is enough to get a foot in the door, and grab this Court's attention. But it's not enough to get emergency relief. More generally, it is difficult to see how this Court could grant real−world emergency relief without having a sense of where, exactly, Petitioner is. So the Court orders the following. By the close of business on December 26, counsel for the government must file a statement and confirm where, exactly, Petitioner is located. Counsel for the government also must contact the facility where Petitioner is located, and obtain information about Petitioner's medical condition and medical care. Counsel must ascertain whether Petitioner is receiving medications (and if so, what he is receiving), and must update the Court. Counsel has leave to file that statement under seal. Basically, this Court needs to know where Petitioner is located, and whether there is a genuine need for medical treatment, before it could grant relief. Maybe Petitioner isn't getting the medical care that he needs, or maybe he is. This Court cannot grant relief in the abstract based on speculative facts that may or may not reflect the current state of affairs. The first step is to pin down the facts. This Court will await the government's report, and will hold a hearing at a later time as necessary. The Court thanks counsel for their anticipated cooperation. Mailed notice. (jjr, )


**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.